**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re:<br><br>PARAGON INDUSTRIES, INC.,<br><br>Debtor. | Case No. 25-80433-PRT<br>Chapter 11 |
| PARAGON INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MUSKOGEE CITY-COUNTY PORT AUTHORITY; and JOHNSTON'S PORT 33, INC. D/B/A OAKLEY'S TERMINAL MUSKOGEE,<br><br>Defendants. | Adv. No. ________________ |

**COMPLAINT TO DETERMINE INTEREST IN**
**AND REQUIRE TURNOVER OF PROPERTY**

Debtor, Paragon Industries, Inc. (the "Debtor"), for its complaint against Muskogee City-County Port Authority ("MCCPA") and Johnston's Port 33, Inc. d/b/a Oakley's Terminal Muskogee ("Oakley," and together with the MCCPA, the "Defendants") states as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the Eastern District of Oklahoma (the "Court") has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and arises out of the Debtor's Chapter 11 case, Case No. 25-80433-PRT (the "Bankruptcy Case").

4. This action is brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5. In compliance with Bankruptcy Rule 7008(a), the Debtor consents to entry of a final order or judgment by the Court in this matter.

## PARTIES

6. The Debtor is the debtor in possession in the underlying Bankruptcy Case.

7. MCCPA is a governmental entity headquartered in Muskogee County, Oklahoma, and has entered an appearance in the Bankruptcy Case.

8. Oakley is an Oklahoma corporation and has entered an appearance in the Bankruptcy Case.

## BACKGROUND

9. On May 21, 2025 (the "Petition Date"), the Debtor initiated the Bankruptcy Case through the filing of a voluntary petition with this Court pursuant to Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

10. On June 11, 2025, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

11. Pursuant to Bankruptcy Code sections 1107 and 1108, the Debtor has retained possession of its assets as a debtor in possession and is continuing to operate its business.

12. No trustee or examiner has been appointed in the Bankruptcy Case.

13. MCCPA oversees Port Muskogee (the "Port"), an inland port and transportation complex located in Muskogee, Oklahoma.

14. Prior to the Petition Date, MCCPA entered into a series of lease agreements with Oakley whereby Oakley leased from MCCPA various parcels of real property at the Port, from which Oakley operates a shipping and transportation terminal. On or about November 20, 2018, MCCPA and Oakley entered into an Amendment and Restatement of Lease Agreement (the "Master Lease").

15. On or about November 16, 1999, the Debtor entered into a Sublease Agreement (the "Sublease") with Oakley whereby the Debtor leased from Oakley a parcel of land comprising approximately 2.21 acres at the Port (the "Leased Premises").

16. The Debtor constructed, at its own cost and expense, a building and related facilities on the Leased Premises, from which the Debtor accepted shipments of raw materials and shipped out finished product via barge. The Leased Premises also house the Debtor's slitting facility, where steel coils are slit/cut into narrower coils as part of the manufacturing process.

17. The Debtor has owned and kept various items of equipment at the Leased Premises, at its own cost and expense, which the Debtor used in its operations. Such equipment includes, but is not limited to, a Braner slitter (the "Slitter") that was purchased by the Debtor and delivered to the Leased Premises over twenty years ago. A list of the equipment owned by the Debtor and kept at the Leased Premises is attached hereto as **Exhibit A** (the "Equipment").

18. None of the Equipment was purchased by the Defendants.

19. The Debtor has paid all personal property taxes on the Equipment from the outset of the Sublease.

20. The Debtor has maintained insurance on the Equipment.

21. Prior to the Petition Date, on or about February 3, 2025, the MCCPA initiated an action against the Debtor and Oakley seeking, among other things, a declaratory judgment that certain improvements at the Port are fixtures to the Port's property. Therein, MCCPA *does not* allege the Slitter is a fixture and/or asset owned by MCCPA or Oakley.

22. Pursuant to Section 541 of the Bankruptcy Code, all interests of the Debtor in and to the Equipment became property of the bankruptcy estate (the "Estate") upon the commencement of the Bankruptcy Case on the Petition Date.

23. Prior to the Petition Date, MCCPA and Oakley declared the Sublease to be in default.

24. The Slitter can be removed and transported away from the Port.

25. MCCPA and Oakley remain in possession, custody, or control of the Equipment.

26. MCCPA and Oakley have refused the Debtor's demands for turnover of the Equipment and claimed that certain of the Equipment, including the Slitter, constitutes a fixture and/or asset owned by MCCPA or Oakley.

27. The Debtor disputes these assertions and maintains that the Equipment is property of the Estate.

28. MCCPA has represented to third parties that it is the owner of the Equipment, including the Slitter.

29. On November 25, 2025, the Court entered its *Order (A) Approving Bidding Procedures for the Sale of All of Substantially All of the Debtor's Assets, (B) Scheduling Certain Dates With Respect Thereto, (C) Approving the Form and Manner of Notice Thereof, (D) Approving Bid Protections, (E) Approving Contract Assumption and Assignment Procedures, and (F) Authorize the Debtor to Enter Into Definitive Purchase Agreements* [Doc. 730] (the "Bidding Procedures Order")[1], which approved certain procedures for the sale of the Debtor's assets (the "Bid Procedures").

30. Pursuant to the Bid Procedures, the Debtor and its professionals engaged in a marketing and sales process for substantially all of the Debtor's assets, which process included the solicitation of bids from interested parties.

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the APA, as applicable.

31. Multiple bidders included as part of their proposals for the purchase of the Debtor's assets a requirement that the Debtor deliver ownership of the Slitter.

32. Integrated Utility Services LLC ("IUS") was one such bidder, having submitted a bid of $48 million, which included the requirement that the Debtor deliver ownership of the Slitter as part of the sale.

33. On February 19, 2026, an auction was held for the sale of all or substantially all of the Debtor's assets (the "Auction").

34. The assertion by MCCPA that it was the owner of the Slitter forced the Debtor to agree to lower the sales price for the Debtor's assets in exchange for removal of the requirement that ownership of the Slitter be conveyed as part of a sale transaction.

35. Ultimately, IUS was selected as the winning bidder, having lowered its bid from $48 million to $40 million as a result of the removal of the requirement that ownership of the Slitter be conveyed.

## COUNT I: DECLARATORY JUDGMENT

36. The Debtor repeats and realleges each of the above paragraphs as if fully set forth herein.

37. There is an actual controversy between the Debtor and the Defendants as to which party is the owner and entitled to possession of the Equipment.

38. The controversy between the Debtor and the Defendants is definite and concrete.

39. The controversy between the Debtor and the Defendants concerns legal relations among the parties, each of which has interests adverse to the other.

40. The controversy between the Debtor and the Defendants is real and substantial so as to be capable of a decision granting or denying specific relief of a conclusive nature.

41. Pursuant to 28 U.S.C. § 2201, this Court may determine the rights and relations of any party in interest seeking a declaration as to those rights, whether or not relief is or could be sought.

42. The Debtor seeks a declaration pursuant to Bankruptcy Rule 7001(b) and (i) that the Equipment is property of the Estate and that the Equipment is free and clear of any claim or interest of the Defendants.

**COUNT II: TURNOVER**

43. The Debtor repeats and realleges each of the above paragraphs as if fully set forth herein.

44. The Equipment is property that the Debtor may use, sell, or lease under Bankruptcy Code section 363 and is of more than inconsequential value to the estate.

45. The Defendants refuse to surrender the Equipment to the Debtor in violation of Bankruptcy Code section 542.

46. The Debtor seeks a judgment compelling the turnover of the Equipment.

**COUNT III: CONVERSION**

47. The Debtor repeats and realleges each of the above paragraphs as if fully set forth herein.

48. The Debtor is the owner of the Equipment.

49. The Defendants are wrongly in possession and control of the Equipment.

50. The Defendants' exercise of control and dominion over the Equipment by the Defendants was wrongful and in violation of the Debtors' rights.

51. The Debtor has been harmed as a result of the Defendants' exercise of dominion and control over the Equipment, which resulted in the Debtor receiving a decreased sales price for its assets in an amount not less than $8 million.

52. The Debtor is entitled to recover the value of the Equipment, with interest at the legal rate from the time the Equipment was converted, or the highest market value of the Equipment at any time between the conversion and the verdict, and a fair compensation for the time and money properly expended by Debtor the in pursuit of the Equipment.

## COUNT IV: CIVIL CONTEMPT FOR VIOLATION OF AUTOMATIC STAY

53. The Debtor repeats and realleges each of the above paragraphs as if fully set forth herein.

54. Bankruptcy Code section 362(a) operates as a stay that protects the Debtor and property of its estate.

55. Pursuant to Bankruptcy Code section 362(a), the Defendants are prohibited from taking any action that improperly interferes with property of the Debtor's estate, including the Equipment.

56. Courts may hold a party in civil contempt for willful violations of the automatic stay pursuant to Bankruptcy Code section 105(a).

57. The Defendants have improperly exercised control over property of the Debtor's estate, including keeping possession over the Equipment and representing to others that certain items of Equipment, including the Slitter, are not owned by the Debtor.

58. The Defendants have willfully violated the automatic stay.

59. The Defendants' actions have caused and continue to cause harm to the Debtor by depriving the Debtor of its property and the ability to monetize the same.

60. The Defendants' actions have further caused harm to the Debtor by decreasing the value realized by the Debtor for its assets at the Auction.

61. The Debtor is entitled to entry of an order holding the Defendants in contempt for violating the automatic stay and awarding the Debtor damages.

## CONCLUSION

WHEREFORE, the Debtor demands judgment against the Defendants:

A. That the Court determine the Equipment is property of the Estate and is free and clear of any claims or interests of the Defendants.

B. Requiring the Defendants to surrender possession of the Equipment to the Debtor.

C. Awarding damages against the Defendants for conversion of the Equipment in an amount not less than $8 million, the exact amount of which will be proven at trial.

D. Holding the Defendants in contempt of court and awarding damages against the Defendants for violating the automatic stay.

E. Awarding the Debtor its attorneys' fees and costs associated with this adversary proceeding, including, for the avoidance of doubt, professional fees and expenses incurred by other estate-retained or Committee-retained professionals to the extent such fees and expenses are paid by, reimbursed by, or otherwise chargeable to the Debtor's Estate..

F. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Clayton D. Ketter*

Clayton D. Ketter, OBA No. 30611
Jason A. Sansone, OBA No. 30913
PHILLIPS MURRAH P.C.
424 N.W. 10th St., Suite 300
Oklahoma City, OK 73103
(405) 235-4100 - telephone
(405) 235-4133 - facsimile
cdketter@phillipsmurrah.com
jasansone@phillipsmurrah.com
**Attorneys for Debtor**

# EXHIBIT A

**COIL SLITTING LINE / MILL:** 1999 BRANER, 60,000-LB. CAP., 72" W x .500" COIL THICKNESS, CUSTOM DESIGNED AND MANUFACTURED FOR PARAGON INDUSTRIES' SPECIFICATIONS, COMPLETE WITH
(1) BRANER ENTRY COIL CART, 60,000-LB. CAP., 72" MAX COIL WIDTH;
(1) 1999 BRANER UNCOILER, MDL. UC9487, 60,000-LB. CAP., 72" MAX COIL WIDTH;
(1) 1999 BRANER SLITTER, MDL. SL9491, DUAL ARBOR HEAD TYPE, 72" x .500" TO .680" THICKNESS CAP.;
(1) BRANER RECOILER, 60,000-LB. CAP., 72" MAX. ROLL WIDTH;
(1) 1999 BRANER AGENT COIL CART, 60,000-LB. CAP., 72" MAX. COIL WIDTH;
(1) BRANER SHEER, MAX GAUGE .500" AT 100,000-PSI, MAX. LINE SPEED 600-FPM, BUTECH BLISS JOB #M820-SS, MDL. SS765;
(1) BUTECH NEGATIVE COIL SCRAP CHOPPER WITH CHOPPER TO DUMPSTER TRANSPORT CONVEYORS;
(1) BRANER COIL BANDER (NEW);
(1) BRANER CONTROL, S/N EH-16565, 460-VOLT, 3-PHASE, 60-CYCLE, COMPLETE WITH EDGE GUIDE SYSTEM;
(1) 2022 BRANER CNC RUBBER STRIPPER RING GRINDER, S/N EH-16565, [UNUSED];
(1) TSI/AMERAMAC MDL. 1100 RUBBER STRIPPER RING LATHE, S/N 293-B [VG]

**REPLACEMENT COMPONENTS** ON-SITE FOR COIL SLITTING LINE / MILL, CONSISTING OF BUT NOT LIMITED TO
(1) RECOILER ARBOR;
(4) SETS OF SLITTER KNIVES;
(4) SETS OF SCRAP CHOPPER KNIVES;
(LOT) TOOLING FOR SLITTING ARBORS [NEW]; (LOT) TOOLING FOR SEPARATORS [NEW];
(4) SETS OF STRIPPER RINGS;
(1) STRIPPER RING LATHE;
(1) STRIPPER RING GRINDER; (LOT) DC DRIVE MOTORS;
(1) AC DRIVE MOTOR;
(1) SCRAP CHOPPER GEARBOX; (LOT) HYDRAULIC CYLINDERS; (LOT) HYDRAULIC MOTORS; (LOT) SIDE GUIDE ROLLERS;
(1) SLITTER DRIVE;
(1) RECOILER DRIVE;
(1) RECOILER HOLD DOWN WITH SAFETY MODS; (LOT) SCRAP CONVEYOR COMPONENTS
**VALUED WITH COIL SLITTING LINE / MILL*

**BRIDGE CRANE:** OVERHEAD, P&H, S/N CJ-32689UD, DUAL BEAM, 40-TON CAP., STAND ALONE, COMPLETE WITH P&H 40-TON COIL HANDLER AND 300' PARALLEL CRANEWAY;
*NOTE: NOT PART OF BUILDING SUPPORT;*
**VALUED WITH COIL SLITTING LINE / MILL*

**AIR COMPRESSOR:** ROTARY, INGERSOLL RAND, MDL. R1101-A125, S/N ROX1000295U-19168, MFD. 2019, COMPLETE WITH FULL PLANT PNEUMATIC DISTRIBUTION SYSTEM
**VALUED WITH COIL SLITTING LINE / MILL*

**MISCELLANEOUS SHOP EQUIPMENT:** CONSISTING OF BUT NOT LIMITED HYDRAULIC H-FRAME PRESS, ARC WELDER AND WELDING EQUIPMENT;
**VALUED WITH COIL SLITTING LINE / MILL*

**ITEMS LISTED FOR REFERENCE ONLY - NOT PART OF 1999 BRANER SALE**

**TOOLS AND EQUIPMENT:** PLANT MAINTENANCE, CONSISTING OF BUT NOT LIMITED TO BANDSAW, VERTICAL MILL DRILL PRESS, HYDRAULIC HOSE CRIMPERS, HAND TOOLS, NEW AND USED MAINTENANCE AND REPAIR PARTS;
*NOTE: LISTED FOR REFERENCE ONLY, NOT PART OF 1999 BRANER SALE*

**BANDING MATERIAL CHOPPER:** SWEED SIGNOID, MDL. 517 AE, S/N 40305;
*NOTE: LISTED FOR REFERENCE ONLY, NOT PART OF 1999 BRANER SALE*

**EXCAVATOR:** 2007 VOLVO, MDL. EC290CP, S/N VGEC290CP00110245, COMPLETE WITH 40" ELECTROMAGNETIC LOADING MAGNETIC AND GENERATOR;
*NOTE: LISTED FOR REFERENCE ONLY, NOT PART OF 1999 BRANER SALE*

**FORKLIFT**: TAYLOR, MDL. T-650L, S/N S-EH-31896, 65,000-LB. CAP., 40,505.7- INDICATED HOURS, COMPLETE WITH STEEL COIL HANDLING ATTACHMENT;
*NOTE: LISTED FOR REFERENCE ONLY, NOT PART OF 1999 BRANER SALE*

**FORKLIFT**: HYSTER, SERIES XL2, SO #0848, S/N F006A11380Y, 3-MAST, 6' FORKS, CUSHION TIRES;
*NOTE: LISTED FOR REFERENCE ONLY, NOT PART OF 1999 BRANER SALE*

**FORKLIFT**: HYSTER, MDL. H700F, S/N E008D01559S;
*NOTE: LISTED FOR REFERENCE ONLY, NOT PART OF 1999 BRANER SALE*